Good morning, ladies and gentlemen. Our first case for this morning will be Pierce v. Visteon Corporation. Mr. Weldy. Good morning, Your Honors. May it please the Court, my name is Ronald Weldy of the law firm of Weldy Law. I'm here on behalf of the class. The reason I am taking up the Court's time this morning is, first and foremost, the class believes that the District Court erred in awarding each member of the class $2,500 apiece. It is our position that the District Court, as required by the statute, was to award a daily penalty of somewhere between $0 and $110 a day. And that by awarding $2,500 per class member... Counsel, before we get too far into the merits, I think we need to discuss appellate jurisdiction. The District Court's final decision was entered in June 2013, and the appeal was filed in the spring of 2014. That seems a little out of time. Your Honor, I believe that I did everything that I was supposed to do, with the exception of filing a notice of appeal, to protect my class... Well, but unfortunately, filing of a timely notice of appeal is an event of jurisdictional significance. Well, Your Honor, as the Court knows, I filed a timely, even early, trial rule 58E motion to... Which was denied. Which was denied, and before that happened, there was a... And on the day it was denied, there was still time left to file a notice of appeal, which didn't happen. After the rule 58E motion was filed, there was a status conference on the record, which the transcript has been provided to the Court, wherein Judge McKinney made it abundantly clear to both parties that he was not giving up jurisdiction of the case. He was not entering a final judgment. He had no intent... Well, unfortunately, he may have been mistaken about that. Part of your brief on this subject sounds like you're appealing to an old doctrine that was called the unique circumstances doctrine, which was that if you had done everything needed to make a timely appeal as the district court described that you needed to do it, then the appeal was timely, no matter how the rules worked. But unfortunately for you, the Supreme Court overruled that doctrine in 2007 in Bowles against Russell. And I'm aware of that. That was briefed by the appellees in the jurisdictional memos, and the class is not making an argument underneath that doctrine. I did not cite the one case that referred to that doctrine. All the cases cited in the jurisdictional memos and in both of the appellate's brief and reply brief, not one case underneath unique circumstances was cited to. The cases I cited to said that the district court has the discretion as to when final judgment is entered. And in this situation, it is apparent, based upon the judge's words from his status conference and his actions thereafter, that Judge McKinney decided to not enter final judgment because not only did he feel that he wouldn't do so until after the attorney's fees and costs were ordered... But unfortunately, the only way to do that is the way provided in Rule 58. And as we know, the district judge denied that motion. Well, I don't know that he did. I hope you realize the problem. District judge announces his decision under Rule 4 that's treated as a final judgment 150 days later, whether the district judge wants that or not. And the time to appeal is ticking as of the 150th day. Is there any answer to that technical outcome reading the rules? Your Honor, my understanding is that the cases that we cited, Pandrel, USLP, Airbus, you know, from the Federal Circuit 2003, quoting a U.S. Supreme Court case from 1958, the... Yeah, it's a unique circumstance case that's being quoted. Is that what it is? Yes. Okay, well, I wasn't aware of that. I apologize. So here's your problem. The district judge does say there will be no final judgment until the matter of fees is addressed. So the district judge is signaling that he's considering the question of fees as part and parcel of the judgment, which perhaps you have some argument since you were urging a common fund approach. You know, might have even modified his view of damages. Who knows? I mean, maybe he really wasn't finished. But you didn't take the steps, the 58E steps that would have made it clear that this was all bundled up into one thing. I guess I don't understand. I mean, I filed the 58E motion. What do you mean I didn't take the steps? And I don't mean to be asking questions of you. Well, after it was denied, though, the option of moving pursuant to that rule was over, wasn't it? Well, based upon what the court had abundantly made clear at the previous status conference, the judge's words fell in with the denial of the motion. I mean, in essence, he was saying it was moot. There was no reason to do it because there was no final judgment being entered. Yeah, but he was wrong. That's the problem. That's why we end up thinking that this looks like a unique circumstances doctrine case. The judge may have believed that he didn't have to grant the Rule 58 motion in order to extend the time to appeal, but he was wrong. He did have to grant that to affect the time for appeal. That's what brings me back to Appellate Rule 4. Do you have an answer to the application of Appellate Rule 4 under which the judgment is treated as entered 150 days after the announcement of the decision? Well, I'll answer that in two parts. I mean, first off, I did cite this court's recent ruling in the Passananti— I wish you would address my question. Don't cite rulings. Just explain how, in your view, your position is consistent with that rule. Okay. Well, in this Passananti—I may be pronouncing it incorrectly. I apologize. I just said don't cite decisions. This court said— Explain in words how your position is consistent with that rule. Well, either the district court had the discretion to manage his case and decide when final judgment was going to be entered. It does. That's Rule 58E. And that included making decisions about how the case was going to proceed under Rule 23, you know, determining class administrator, approving the notices to go out. It wasn't just—the only open decision wasn't attorney's fees and costs. There were other decisions that the district court made after the entry of judgment. What were those decisions? Those decisions had to do with—we discussed about appointing a mediator. Now, I mean, not a mediator, a class administrator. I'm sorry. And it was done by agreement. We didn't end up having to brief them. It was fine. We also had to brief and the court had to approve the notice that was going out to the class to let them know about the judgment and also let them know about what was being asked for in terms of attorney's fees and costs. So those Rule 23 responsibilities of the district court also took place after the official entry of judgment was entered, not the final judgment, but the actual monetary amount was made. So was there any signal from the district court that after the findings of fact and conclusions of law that it wasn't finished with either liability or damages, this 1.8 or so million in damages it's decided is appropriate? Because if it thinks—if there's some indication that this was tentative, you might be in a better position. I did not get the—I mean, I don't—you know, as I sit here, I have no reason to believe that we were going to be talking about reopening up whether the 1.8 million was appropriate or not or was the correct amount or not. So you understood that to be the judge's final word on damages? Correct. And then just a couple weeks later, we have a status conference, and the judge comes out very specifically and says, I am not entering final judgment. So I took the judge at his word and fouled him and understood that that was the reason why my Trial Rule 58e motion had been denied. Everything he said was consistent. So your understanding was that it was denied because it was premature in a sense. There was no judgment. It was moot because he was not entering a final judgment, so there was no reason to extend the time to file a notice of appeal. That's just a total misunderstanding of Rule 58e. The grant of a motion under Rule 58e is what permits the non-entry of the judgment. I don't see how a district judge can say, I'm justifying the rules. Rules don't apply in my court. I'm not entering judgments when the rules require. I'm ignoring motions under these rules. You know, when a judge starts talking like that, you'd better be appealing early and often. Well, he didn't say anything like that. All he said was, I'm not entering final judgment. Yes, he did. He said, I am going to deny your motion under this rule because I'm violating the rest of Rule 58 by not entering a proper judgment. And therefore, I don't have to follow Rule 58e either. That's pretty much what he said. Well, Your Honor, this court asked me in the jurisdiction of memos, and I went ahead and repeated it in the briefs, whether or not my Rule 58e motion could act as a notice of appeal. And I think it does. I mean, first off, at the status conference, after the Rule 58e motion had been filed, the judge asked me, Mr. Weldy, do you intend to appeal this case? And I said, yes. It's on the record. The judge knew about it. Visteon knew about it. Everybody knew that we intended to appeal the case. So all the case law, everything that this court asked me to brief regarding whether or not my trial Rule 58e motion can be interpreted as a notice of appeal, I believe is satisfied. The ball was not hidden here. Everybody knew that the class was appealing, and they knew it in a timely fashion. And so to the extent that there is a way around filing an actual notice of appeal, and it is by interpreting my trial Rule 58e motion as a notice of appeal, that in combination with my words on the record at the status conference held shortly thereafter, effectively is a notice of appeal. Well, if you would like to continue on your merits argument, you are certainly alerted to the fact that the court has jurisdictional concerns. But don't use up all your time on that. Thank you, Your Honor. Your Honor, once again, as I was saying, it's a position. But I have a question for you about your argument that some members of your class, some of your clients, in effect, didn't get enough money. It seems to me or got too much money. I'm sorry.  Got too much money. It's a very odd position to take. I'm not sure that they would regard their interests as being advanced by your taking such a position. And I'm baffled that you think that we should send this back for a redistribution of the damages the judge has ordered. Well, actually, I'm not asking for it to be sent back. I'm asking for this court to actually impose the correct thing. We don't do that. Other circuit courts have. I don't think in this situation, at least as I understand your argument, you're making an argument that the $110 a day amount is the amount that should apply, as I understand your argument, to every single day. No, actually, I'm still leaving it up to the court what the number should be, anywhere between 0 and 110. That's a district judge determination. Judge McKinney explained why he thought the approximate $1.8 million properly balanced the culpability of the behavior and the prejudice of the people in the class and the other factors. I don't see how a court of appeals could do that without completely reopening the record. I was simply asking this court to, based upon the judge's facts, which were not contending or erroneous, to simply make the decision because the district court, in fact, violated the statute by not applying a daily penalty. Instead, he just gave a flat amount. And the Fourth Circuit did it in the Underwood case. In that case, the district court had granted 0, and they looked at the facts and said, we think a maximum penalty is appropriate. Circuit courts have, in fact, went ahead and inserted their own daily penalty in lieu of sending it back to the district court. It's a very odd position, though, because the district court does justify the flat amount. The statute allows such other relief as the judge may think appropriate. Maybe he thought it would be easier to administer. I suspect he probably did. So, I mean, we could certainly lop off the extra recovery for the people who didn't have, well, the people who were the 22 days or less of delay people who I suppose are the ones that we're talking about. Well, but I mean, we don't know, we have no idea what the judge thought would be an appropriate daily penalty because, in essence, he gave more money to people who barely had their notices sent to him late than the people who never got a notice. I mean, it's exactly the opposite of what common sense would dictate that a judge would grant. The people who never got a notice should be the ones who received the highest amount of money. They were the ones that could, you know, just as a matter of common sense, had the most harm because they never received a notice versus somebody who received it only five days late. But some of them are harmed more than others. Some of them maybe were very healthy for that 18 months and didn't really need. Maybe they just saved money that they would have had to spend on COBRA premiums. There was a lot going on, and so I can certainly see why the judge might have thought that a flat fee, especially given the bankruptcy context, made some sense. He was trying to wrap up this case which had been hanging around for a decade. I don't disagree, Your Honor, but, you know, the statute itself says enter a statutory daily penalty and such other relief as may be warranted. So if you're going to enter a statutory penalty, it has to be the $0 to $110 a day and such other relief, which as this court in the Gomez v. St. Vincent case said, the and such other relief can be things like equitable relief in order to pay somebody for the medical expenses that they had that they should not have incurred if they would have had a chance to pay the premiums and would have had the COBRA insurance in place. Now, of course, your opponents point out you could take this $1,852,500, look at the days of each of the people in the class, come up with some daily amount of money, and it would probably be within the $110 per day. Except that, once again, that's not what the judge's ruling reflects at all. I mean, if anything, the judge said that somebody who was only five days late deserves a whole lot more money, and they must be severely damaged versus somebody who never got their notice because. I don't think you have to interpret it that way, actually. He's trying to come up with something that's administrable. I don't know how to interpret it. Yeah, but here you are arguing against your clients. It's a very strange situation. Your Honor, I'm not arguing against my clients. I'm saying that the district court didn't follow the statute. And your clients got too much money. That the district court violated the statute with regard to a handful of my clients, yes. Okay. Your Honor, the other thing maybe I'll talk about in rebuttal because I appear to be in my last minute here, is the issue about the false information provided by Visteon with regard to the spreadsheets that were to make the class. And I don't think there's any question that by putting N.A. in for the COBRA. I'm sorry. No, we know this issue, and the district judge thought that you sat on this way too long. You should have done your 30B6 deposition much closer to the time. Yeah, and I've never heard of that. I don't understand. When you find out that the defendant or any party has provided false information, why does it matter when you find it out? That was false. Because it changed. They knew it was false. They should have supplemented. That's what Rule 37 says. That's what Rule 26 says. It wasn't during trial. It was six years before we ever had a decision in this case. How was it premature? How was it too late? Well, you can follow up on that if you would like. Thank you, Your Honor. Mr. Murphy. Good morning, Your Honor. Honest and Murphy, on behalf of the appellee, Visteon, as to the first issue with respect to appellate jurisdiction, by operation of the rules, it would appear that a merits appeal in this case is untimely. This court has held that the power of federal courts to extend the time limits on the invocation of appellate jurisdiction is severely circumscribed. That was in the Robinson Laws. It's the Supreme Court in Bowles. Yes. And I think we will agree that the district judge in this case believed that an appeal was not right. That is evident from his order on November 26. It was evident from the conference that we had. That, however, was wrong. The rules are very explicit. The only thing that will toll the time to appeal is a timely motion, post-judgment motion. The best argument I heard from Mr. Weldy is that despite appearances, the order of June 25, 2013, was not a final decision and, therefore, didn't come within the scope of Appellate Rule 4A.7 because details such as class notice and administration remained to be determined. And if it genuinely wasn't a final decision, then Appellate Rule 4A.7 didn't start the clock. So was it genuinely final? It was a final decision in terms of liability and damages. It fully adjudicated all of the issues. The question is, do administrative details in a class action, are those kinds of administrative details necessary to finality? I believe that those administrative details are collateral issues, like the issue of attorney's fees. Is there any authority? I don't have any authority with respect to that particular issue, Your Honor. So it's a big issue, though, because class actions, as you know, because of the interests of the unnamed members, have special criteria for such things. And to be thoroughly finished with the case might require, one could imagine, having those details complete. And that was really my question, too. How confident are we that that June 2013 order really did wrap up everything? Or was the judge keeping open even the possibility of the damages award for other reasons? There was nothing left to be decided after that order was issued other than the issue of attorney's fees. There might not have been, but what does he say in that order to make you think that essentially he's saying, I am now done? The judge fully adjudicated liability against my clients. He weighed the evidence, pro and con, and came up with a damage calculation. There was nothing left to be done other than fees. And I don't have a copy of the order in front of me, but I do believe at the end of the order the judge made some reference to the issue of attorney's fees and the fact that that would be addressed at a later point in time. But attorney's fees have long been regarded a collateral matter, which is separate and apart from merits. We all know attorney's fees are under Rule 58E, if anywhere, but we don't know about how class action procedure intersects with all of this. I do not have any authority in that regard, Your Honor. It wasn't briefed by either of the parties. Okay. But just by pure operation of the rules, if the June 25, 2013, order was a final decision, which we believe it to be, then that means that a judgment would have been entered in November of 2013 by operation of the... No, we don't have the days work out if you're going to start there. You don't need to review that. Well, the 150th day would have been November 22, 2013. Right, right, right. We know that. And the only thing that would have stopped that would have been a timely post-judgment motion, such as one brought under Appellate Rule 4. One was brought, but it was denied. We're looking at Rule 23C3, which is about judgments in class actions, which says, whether or not favorable to the class, the judgment must, A, if it's a B1 or B2 class, not here, this is a B3 class, B, for any class certified under B3, include and specify or describe those to whom the Rule 23C2 notice was directed, who have not requested exclusion, and whom the court finds to be class members. So that at least suggests that some of the class formalities do need to be reflected in the final judgment. And I can't address with respect to who is a class member. That was addressed in the judge's order. There was a lengthy discussion of who is and who is not a class member in that order. Does it talk about those to whom the Rule 23C2 notice was directed? I do not believe the judge's order does. All right. So that's at least something. Do we know, did anybody opt out of this class? No, Your Honor. No, Your Honor. There was actually a class notice that was sent out, I believe in October of 2007, to the individuals. And since this is a class where we know who the members are, I mean, this isn't a situation where it's a products liability case where you don't know. And you had 100% stay in. No one opted out. No one opted out, no. Interesting. No one opted out of the class. But the class members have been known since October of 2007. Right. No, I was just looking at the rule. I thought we were on the topic whether these final class action details deprived the June Order of the District Court of the necessary finality for appeal. I would submit that those are administrative matters and that the district judge's decision, the findings of fact and conclusions of law, was a full adjudication on the merits of liability and damages. If it hadn't been a class action, I don't think there's any doubt that that would be correct. But it was a class action. Maybe what we need is supplemental memos on the question how Rule 23C3 interacts with Rule 58 in a class case. Yeah, both parties could file memoranda on that subject within 14 days. That would be just simultaneous memoranda. We have certainly no objection to that, Your Honor. On the penalty issue, we don't believe the district court abused its broad discretion in assessing a $1.8 million penalty against Visteon. Unlike the class, Visteon regards $1.8 million as a lot of money. The district judge's award was based on the court spending considerable time reviewing the evidence that had been submitted by the parties and reflected an amount that the district court explained served the purpose of the penalty but was also proportionate to the injury. There is evidence in this case that the conduct at issue was caused by miscommunications with Visteon's third-party administrators. Visteon certainly is vicariously liable for their conduct and the court found as such. It doesn't make Visteon look all that great, which Judge McKinney also observed, kind of floating around not knowing who was doing what and, oh, it was Ford for two years. So, yes, there was a problem. I think the court found that Visteon had carried over a cumbersome notification system which it inherited from Ford and did not properly manage that system over time. That's where the district court found that Visteon had been at fault. And he looked at some individual experiences and he said this really hurt some people. He did. He did. There were five people for whom the court found that there was some evidence of prejudice and specifically the fact that they had- So it was a sampling. He wasn't trying to look at all 700 odd or whatever it was people in the class. Correct, but there was no evidence. I mean there was five people out of a class of 741, but there was no evidence that the other 99 percent of the class had any prejudice whatsoever. There was absolutely no evidence provided by class counsel. One way or the other. I mean the judge was trying to sample. He was trying to be efficient. I don't think you can assume they had nothing either. But this isn't a case where there was significant evidence of prejudice to the class as a whole or significant evidence of out-of-pocket losses to the class. Additionally, the evidence in the record is that Visteon, as soon as it discovered the magnitude of this issue, immediately instituted a weekly auditing procedure to make sure that this would never happen again. And it hasn't. It instituted that procedure in 2007 during the discovery process on its own accord. And that was in the record. That was prudent of it, I would say. Sounds like a good idea. We certainly believe so. This gets to the point of the class definition and the court's decision to cut it off with the date when the complaint was filed as opposed to the somewhat later date, because I gather there were some people who experienced problems after the filing. You just said yourself it wasn't until into the litigation that you fixed it. Correct. And the court cut off the class as of the date the complaint was filed. We had early on in the case proposed to the court that there be some certainty as to when the class should end. We had proposed the date the complaint was filed. The class proposed a later date, which was May 31, 2006, which appeared to have been picked at random. The court ultimately opted to select our date, which was the date the complaint was filed. Subsequent to that, class counsel filed a flurry of actions, first in the district court, to move to amend to reinsert those individuals, those post-complaint filing individuals, back into the class. He did that four months after the court cut off the class. That motion was denied. Six months after that, almost a year after the class had been cut off as of the date of the filing of the complaint, class counsel filed a separate action here in Chicago on behalf of a gentleman named Richard Thomas to represent the interests of those class members. That action subsequently was dismissed because Mr. Thomas was ineligible to receive COBRA. Right. Let me ask you about something else. I would like you to explain a little bit how the bankruptcy is interacting with this, because it looks to me as though Visteon Corporation and Visteon Systems are listed as debtors, but they're different entities from Visteon International Holdings. Is that correct? That is my understanding, but I am not a bankruptcy lawyer, and I have not represented the company in that process. It puts the district judge's decisions in some context. If I'm right, it looks to me as though actually what the class members will receive is 50% of their claim, so they're not going to receive $2,500. They're going to get $1,250. That is correct. That is by operation of the approved bankruptcy plan. By operation of the plan. And so that may factor into our evaluation of what the judge is doing. Well, we believe that the judge's penalty was appropriate. We believe that it was. I mean, we're not happy with the result, obviously. We wanted a lesser amount. We had actually proposed at trial that the court award a penalty of $0 a day or alternatively awarded a penalty of $1 a day, which would have come out to something along the lines of $278,000.  That constituted six times the amount that Visteon had proposed at $1 a day. Six times. It doesn't mean it's reasonable one way or the other. I mean, Visteon, of course, was proposing $0. You probably thought you didn't do anything wrong or were at least taking that position. We had proposed $0 or alternatively $1 a day based on what we felt was the evidence in the case. The judge obviously disagreed with that approach and went with a number which was significantly more than that. The class is now coming in and saying it should be higher still. This court can't reverse simply because it may have acted differently than the district court. It has to find that the district court's decision was fundamentally wrong. The district court had discretion to award a $0 penalty. Awarding $1.8 million more is not fundamentally wrong. It depends on what the evidence is, of course. Why did it take Visteon so long to produce these spreadsheets? It didn't take us so long to produce these spreadsheets. We conducted a rolling production that culminated in June of 2007. All of the spreadsheets were produced in June of 2007, and they were produced with designations where Visteon had either indicated that they were compliant, Visteon felt that it complied with COBRA, or non-compliant, meaning Visteon felt it didn't comply with COBRA. The information that was produced to class counsel was in spreadsheets that included the employee's name, the date that the employee had been terminated, the reason why they were terminated, and whether or not a COBRA package had been sent to that person. And Mr. Welty is complaining about some spreadsheets, I guess, that had not applicable or N.A. in some of the columns. Yeah, we don't believe, Mr. Welty is trying to conflate that into saying it's false information. This was not false information. The district court never found that Visteon had provided false information, and the opponent never testified that this information was false. What he criticizes is he says that the column for qualified event has a not applicable, and it actually should have a date. But it's really immaterial. And it's immaterial because when we produced this information to class counsel in June of 2007, the purpose for doing that was so that he could select class members. He had the unfettered discretion to select whomever he wanted for the class. And, in fact, he did that. He picked people for the class who had waived medical coverage at Visteon, who received a timely COBRA notice. And significantly with respect to this particular issue, he selected hundreds of people who had been designated as retirees and who had not applicable in the qualifying event column. And I can point the court. It's in the record. Docket 205-1, page 37. 205-1, page 37. This is a spreadsheet that Visteon produced in discovery. The spreadsheet identifies a gentleman named Michael Hageman. He is listed as a retiree. It has his termination date. For the qualified event date and for the COBRA package mail date, there is a not applicable. The next document is docket 194-2, page 1. This is the class list that class counsel submitted to the court. Mr. Hageman is selected as a second class member on the list. In place of a qualified event date, class counsel has used his termination date, which is perfectly appropriate because under the statute, under 29 U.S.C. 1163, subsection 2, termination is a qualifying event. Mr. Hageman is not alone. There are other individuals which we've identified in our brief, including two women, Leslie Hodges and Elizabeth Howitt, both of whom are in the same category. There are many, many more. The point being that class counsel had the ability to pick whomever he wanted to for the class when he received those spreadsheets, and he in fact did. He paid no attention whatsoever to how Visteon characterized that information, and he had over a year in which to conduct discovery to question Visteon if he chose to do so. He never did. So that's why the court did not abuse its discretion in refusing at the eleventh hour to allow the class to reopen discovery and to inject these new people into the case. Going back to the fee issue, or the penalty issue, in the judge's decision, on page 45 of the judge's decision, he finds the average number of days late that COBRA notices had not been sent, and he computes that at 376 days. If we take the total penalty of $2,500, and by the way, that's page 45, and it also can be found in the supplemental appendix, page 92. If we take the total penalty of $2,500 that was allocated to the class members, divide that by 376, you get $6.64, which incidentally is the same computation we had in our brief. So if there's an insistence upon a per diem, it is baked into the judge's decision. We just don't believe that it's necessary that some class members should get $6.64, that the Pearsons who brought this case would get something on the lines of $400. So am I right that no claims distribution procedure has ever been created for this class? There is no claims distribution procedure, correct. Okay. Correct. I mean, that I thought was also relevant to the complaint about the people that you discovered from Ford who in fact had gotten notice because plaintiffs complained that that came along too late, and yet my first reaction to that thought was that once the claims administration procedure gets underway, it's routine in class actions and indeed necessary for the claims administrator to make sure that each person receiving a distribution is a member of the class, and the way the class was defined was as people who didn't get notice. There's a claims administrator who was selected, but that was done after the final findings of fact. It seems like a loose end hanging out there to me. But as to the allocation, what the judge did was he looked at other cases where courts had awarded, in ranges between $300 and $27,000 per plaintiff, and made a decision based on the evidence as to what the appropriate allocation should be to the class members. Significantly, none of the cases that are cited by the class state that the court has to award a per diem penalty. The court can award zero. As a matter of fact, this court in the Gomez case affirmed an award of zero penalty per day. None of the cases cited by the class state that the court can't structure a penalty by awarding a specific dollar amount. Well, what's the point of the penalty, then, if it's in the statute and the regulations, if it's not the baseline? I mean, the way the statute's worded, you can have the statutory penalty in the amount of up to what's now $110 a day, and in your discretion, such other relief. Is that all just so much verbiage in your view? No, it's not verbiage. That whole thing is the penalty. I mean, the court has the discretion to award as part of the penalty a per diem amount up to $110 per day and such other relief as it deems proper. My point is that the district judge had the discretion and the authority to issue a penalty in this case that was an equivalent amount to the class members. We don't find that that's an abuse of discretion in the slightest. It was a remedy that the court explained was intended to punish Viscion, and $1.8 million, as far as I know, this is the largest dollar amount COBRA notification case, at least that I'm aware of. So it satisfactorily punished Viscion, but at the same time, it also covered any potential prejudice that the class members may have incurred, which we believe there was slight evidence, but the court found some, and as Your Honor pointed out, that was a sampling. So there could have been more out there that we weren't aware of. So for all of these reasons and the reasons that we've discussed in our briefs, we believe that the district judge's opinion should be affirmed in all respects. All right. Thank you, Mr. Murphy. Anything further, Mr. Weldy? You have two minutes. Thank you, Your Honor. Your Honor, with regard to the false information, first off, and it was discussed in the briefing of the trial brief, in the spreadsheets that Viscion provided, the same person would be on different spreadsheets and have different information. So while I can't speak directly to the people that Viscion has cited to about whether they were listed in two different ways as retiring in one place and fired as another, in fact, that that happened on a number of occasions, and it's in the record that there were certain people that were discussed, that they had two different qualifying event dates, and they ended up being left out of the case because of that, and that was discussed in the judge's June 25, 2013 order. Now, it's one thing to call that false. It would be another thing to call it sloppy, and it's a third thing to say it's just inconsistent, and had you taken a deposition right away, you could have clarified it. But the order that Judge Stinson entered at the time, the March 14, 2017 order, said you will provide this information, and they didn't provide the qualifying dates. They didn't say, with regard to the COVID notes, either date sent or not sent. They said N.A. N.A. was the incorrect information. How am I, as the class counsel, supposed to, you know, I had no reason to assume this information was wrong. It was being produced pursuant to a court order. The reason you're saying to find that it was not sufficiently informative, you could have followed up and said, what does N.A. mean? And I did, and that's briefed. I had a conversation with opposing counsel, and he said, these people retired, their benefits continue. I'm assuming that this court, when the members of this court retire, your benefits will continue. There are people out there that have their benefits continue when they retire. They would not receive a COBRA notice. Here, in fact, maybe they retired, maybe they didn't. The fact of the matter is, is that when they did retire, there were certain benefits that did continue. Mr. Welty, you don't have much time, and I only have two short questions. When the court asked you, are you going to, you said you're intending to appeal. You told that to the judgment. Absolutely, yes. And he said, you're going to appeal some issues. Did you inform the court at that time what issues were going to be? No, I just said that there were multiple issues that we intended to appeal. And Judge Easterbrook mentioned that perhaps your strongest position with regard to this area of jurisdiction is that there are administrative matters to play out that may extend the time. Do you have any sense how long you would think a court should allow for those administrative matters to play out before the clock starts on the issue of appellate review? I mean, if this is two or three years to administer, attorneys' fees aside, of course. Your Honor, I do know that Rule 23 requires that the class be given notice about what the attorney's fees and costs are that class counsel is seeking. And so it appears to me that that is part of the function of the district court in administering a class action underneath the rule. And so after the decision of attorney's fees and costs are done, and whether or not there were any objections raised by the class, which we do know that in some class actions class members will get together and raise objections and hire separate counsel, which could obviously make things go on for quite a bit of time. And I am aware of that, while it didn't happen in this case. But it seems to me that the administration isn't done until after any objections raised by class members and the attorney's fees and costs are actually determined by the district court. And that's just all mixed-matched in with the court's responsibility of administrating the class. With some of the relief you're asking for here, are we anywhere done with administration in this case? I mean, if this court were to deny everything, at this point in time we would be asking the trustee to pay the class administrator the money and distribute the money. That may be backward. The question Judge Flom asked you got me thinking along a different line, which is if the administrative matters mean that the June 2013 decision was not final, this appeal may be premature rather than too late. Exactly. And we may have to dismiss the appeal because it's too early to appeal. Well, I don't know what else could have taken place. You can address that in your... Okay. In fact, if both sides would please address that in the supplemental materials we've asked. Thank you, Your Honor. I think we've done what we can today. Thank you very much. We will take the case under advisement, subject to our receipt of the...